OPINION OF THE COURT
Titone, J.
The primary issue presented is whether the AguilarSpinelli two-prong test, or the Gates totality-of-the-circumstances test, should be employed in determining the sufficiency of an affidavit submitted in support of a search warrant application (see, Illinois v Gates, 462 US 213, reh denied 463 US 1237; Spinelli v United States, 393 US 410; Aguilar v Texas, 378 US 108). We conclude that, as a matter of State law, our courts should apply the Aguilar-Spinelli test.
Special agents of the United States Secret Service arrested a counterfeiting suspect, and, in the course of interrogation, he signed a detailed statement accusing defendant of keeping large quantities of marihuana and cocaine in his bedroom and adjacent attic. Consequently, one of the agents prepared an affidavit for a warrant to search defendant’s home. According to the affidavit, a confidential informant known as source "A” observed substantial quantities of marihuana and quantities of cocaine in defendant’s bedroom and attic on numerous occasions, saw defendant sell drugs on numerous occasions, and, as recently as seven days ago, "A” observed 150 to 200 pounds of marihuana in defendant’s bedroom and adjacent *638 attic. The affidavit further stated that, pursuant to a consent search, approximately four pounds of marihuana were found in a garbage can at defendant’s residence.
Although the agent did not personally know the counterfeiting suspect, his affidavit said that the undisclosed informant was "a person known to your deponent.” The agent also omitted the fact that the informant was under arrest when he provided this information. Based solely upon this affidavit, a Federal Magistrate issued the search warrant. On August 26, 1983, the warrant was executed by 2 Federal agents and 6 or 7 Nassau County policemen. The search produced 10 ounces of marihuana, over $6,000 in cash and drug-related paraphernalia. Additionally, the Federal agents turned over the marihuana discovered during the consent search referred to in the warrant to Nassau County law enforcement officials.
Defendant was charged with two counts of criminal possession of marihuana, as well as with criminal sale of marihuana arising out of an unrelated May 1984 incident. Defendant sought to suppress the evidence obtained as a result of the August 26 search, but County Court denied the motion. Although the court found that the agent’s affidavit failed to satisfy the "reliability” prong of the Aguilar-Spinelli test, it concluded that the Gates test should be applied in assessing the sufficiency of a search warrant. Under that test, the court determined that there was probable cause to issue the warrant.
Defendant then pleaded guilty to all charges with the understanding that he would receive concurrent sentences in return for his pleas. The Appellate Division, however, reversed and remanded for further proceedings, holding that as a matter of State constitutional law, County Court should have applied Aguilar-Spinelli. The Appellate Division, agreeing with County Court that the reliability of the informant was lacking, found that the warrant had, therefore, been improperly issued, and that the fruits of that illegal search must be suppressed.
A Judge of this court granted the People leave to appeal and granted defendant’s motion for leave to cross-appeal. We now affirm.
Prior to Illinois v Gates (462 US 213, reh denied 63 US 1237, supra), Federal courts applied the two-pronged AguilarSpinelli test in probable cause determinations when evaluating hearsay information from an undisclosed informant (see, *639 Aguilar v Texas, 378 US 108, supra; Spinelli v United States, 393 US 410, supra). Under this test, the application for a search warrant must demonstrate to the issuing Magistrate (i) the veracity or reliability of the source of the information, and (ii) the basis of the informant’s knowledge (see generally, Illinois v Gates, supra; People v Johnson, 66 NY2d 398; People v Bigelow, 66 NY2d 417; People v Hanlon, 36 NY2d 549). We adopted this standard as a matter of State constitutional law (see, e.g., People v Johnson, supra; People v Hanlon, supra). In Illinois v Gates (supra), the United States Supreme Court altered its position and adopted the seemingly more relaxed "totality-of-the-circumstances approach” (id., at 230, 238).
In People v Johnson (supra), this court expressly rejected the Gates approach for evaluating warrantless arrests. In People v Bigelow (66 NY2d 417, supra), although the People urged us to adopt the Gates test in the search warrant context, we found it unnecessary to decide the question, since "the People’s evidence [did] not meet minimum standards of probable cause even if Gates was applied” (id., at 425). This appeal squarely presents the issue left undecided in Bigelow. We are not persuaded, however, that the Gates approach provides a sufficient measure of protection, and we now hold that, as a matter of State constitutional law, the Aguilar-Spinelli two-prong test should be applied in determining whether there is a sufficient factual predicate upon which to issue a search warrant.
We reaffirm today that in evaluating hearsay information the Magistrate must find some minimum, reasonable showing that the informant was reliable and had a basis of knowledge (People v Johnson, supra; People v Landy, 59 NY2d 369; People v Rodriguez, 52 NY2d 483; People v Hanlon, supra). Our courts should not "blithely accept as true the accusations of an informant unless some good reason for doing so has been established” (People v Rodriguez, supra, at 489). The AguilarSpinelli two-pronged inquiry has proven a satisfactory method of providing reasonable assurance that probable cause determinations are based on information derived from a credible source with firsthand information, and we are not convinced that the Gates test offers a satisfactory alternative.
The reasons advanced by the People in support of the Gates test are similar to those enunciated by the Supreme Court itself in Illinois v Gates (supra, at 235-238; see also, People v Johnson, supra, at 406). They contend that the less stringent *640 Gates test will encourage the use of warrants, a highly desirable goal. They assert that the Aguilar-Spinelli test has been applied in a rigid, inflexible manner to the detriment of law enforcement. The commonsense approach of Gates, posit the People, is a more reasonable rule of law, since the hypertechnical two-prong test places an unnecessary burden on law enforcement officers who are not lawyers, but rather public officials "acting under stress and often within the context of a volatile situation” (People v Hanlon, 36 NY2d 549, 559, supra).
Although we agree with the People that the use of warrants should be encouraged (see, People v Hanlon, supra, at 558), there is no reason to believe that police will refrain from obtaining a warrant merely because this State continues to apply the Aguilar-Spinelli test. With limited exceptions, carefully circumscribed by our courts, it is always incumbent upon the police to obtain a warrant before conducting a search. Furthermore, whether there was probable cause will generally be raised by the defendant at a suppression hearing. If a Magistrate has already determined that probable cause existed, great deference will be accorded that finding, resulting in far fewer suppression problems. This, in turn, results in a more efficient use of police resources; it is indeed wasteful to make an arrest or conduct a search without a warrant only to have those efforts invalidated by a suppression court.
Nor is the Aguilar-Spinelli test a hypertechnical approach to evaluating hearsay information. As we stated in People v Hanlon (supra, at 559), "in the real world, we are confronted with search warrant applications which are generally not composed by lawyers in the quiet of a law library but rather by law enforcement officers who are acting under stress and often within the context of a volatile situation. Consequently such search warrant applications should not be read in a hypertechnical manner as if they were entries in an essay contest. On the contrary, they must be considered in the clear light of everyday experience and accorded all reasonable inferences” (see also, People v Bigelow, supra).
In People v Johnson (supra), we recognized that the more structured "bright line” Aguilar-Spinelli test better served the highly desirable "aims of predictability and precision in judicial review of search and seizure cases”, and that "the protection of the individual rights of our citizens are best promoted by applying State constitutional standards.” (66 NY2d, at 407, supra.) We find this reasoning equally persuasive in cases *641 involving search warrants. Given the deference paid to the Magistrate’s probable cause finding, and given the somewhat subjective nature of the probable cause inquiry, the aims of predictability and precision are again well served by providing the Magistrate with Aguilar-Spinelli’s concrete, structured guidelines. More importantly, this will also prevent the disturbance of the rights of privacy and liberty upon the word of an unreliable hearsay informant, a danger we perceive under the Gates totality-of-the-circumstances test.
The unreliability of the hearsay informant was established by County Court and affirmed by the Appellate Division. We have no basis upon which to review or disturb that finding. The reliability prong of Aguilar-Spinelli having not been satisfied, we therefore affirm the Appellate Division order finding the warrant invalid and suppressing the fruits of the search.
The People alternatively assert that Federal law should apply in this case, since the warrant was issued by a Federal Magistrate and executed by Federal agents. We disagree. Since defendant has been tried for crimes defined by the State’s Penal Law, we can discern no reason why he should not also be afforded the benefit of our State’s search and seizure protections (cf., Elkins v United States, 364 US 206; Lustig v United States, 338 US 74; People v Ridgeway, 64 NY2d 952).
Finally, on his cross appeal, defendant asks us to review the denial of portions of his pretrial motion. We agree with the People, however, that the defendant’s cross appeal should be dismissed. The Appellate Division’s order of reversal was not "adverse” to the defendant within the meaning of CPL 450.90 (1), which provides that "[a]n order of an intermediate appellate court is adverse to the party who was the appellant in such court when it affirms the judgement, sentence or order appealed from”. Since defendant’s judgments of conviction were reversed by the Appellate Division, "its order is not appealable by defendant, who was the appellant in that court, notwithstanding that defendant was 'aggrieved’ insofar as his requests] for” suppression of other evidence, and dismissal of the first count of the indictment were denied (People v Rolston, 50 NY2d 1048, 1050; see also, People v Fediuk, 66 NY2d 881, 884). Nor do we find it necessary to consider defendant’s other arguments in support of an affirmance under CPL 470.35 (2) (b).
*642 Accordingly, the order of the Appellate Division should be affirmed and the defendant’s cross appeal dismissed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
On the People’s appeal order affirmed. Defendant’s cross appeal dismissed.